soliciting *ex parte* communications between the Judge and Wilenchik, and (f) whilst Wilenchik had motions in *The New Times* matter and a judicial disqualification matter against Judge Timothy J. Ryan, pending before Judge Baca.

74. Greatly concerned about the abusive and intrusive subpoenas, the clandestine attempt to compromise the presiding Judge, and the patently inappropriate abuse of governmental power, Plaintiffs made a conscious decision to assert their First Amendment rights and responsibilities to *The New Times'* readers.

75. In its October 18, 2007, edition, the newspaper printed the demands of the grand jury subpoenas, revealing the unprecedented attempt to obtain the identity and reading habits of its readers.

76. The publication of those rogue subpoenas was a selfless exercise of free press and the freedom to express political speech in opposition to facially improper government oppression.

77. The newspaper's concerns were justified. Wilenchik's subpoenas were obviously unreasonable, facially unconstitutional affronts to freedom of speech and freedom of the press, and improper under both Arizona law and our Constitution.

78. For example, in her final Order of November 28, 2007, Judge Anna Baca found a compelling case of grand jury abuse at the hands of Wilenchik. No grand jury had approved the Wilenchik subpoenas—Wilenchik had acted as a one-man grand jury. County prosecutors, the Judge ruled, have no common law powers to subpoena witnesses or documents in Arizona (citing *Gershon v. Broomfield*, 131 Ariz. 507, 642 P.2d 852 (1982)). A prosecutor seeking grand jury evidence by subpoena must either secure the prior permission of the grand jury or must notify the grand jury foreperson and the presiding criminal judge within 10 days of issuing a subpoena unilaterally. Wilenchik did neither. The grand jury was nothing more than an empty prop to Dennis Wilenchik and his "investigation."

17

DB04/811373.0002/363337.2

79.     Publishing the terms of a grand jury subpoena is a misdemeanor charge. The statute was designed primarily to "[protect] witnesses, targets of investigation and others from negative publicity."[8] It was not designed to insulate, from public disclosure by a newspaper, the unethical and unlawful behavior of a prosecutor who is misusing his authority to attack the newspaper, its reporters, its readers' right to privacy, and Constitutional freedoms. And it was certainly not designed to shield a prosecutor or detective from conducting an unconstitutional investigation without the involvement of the grand jury process or the Court. Wilenchik's investigatory subpoenas were not grand jury subpoenas at all; they were issued improperly and illegally without notice to, the approval of, or involvement by the grand jury or Court.

80.     Nevertheless, and realizing the risks, *The New Times* published the demands of the Wilenchik subpoenas, and questioned the motives and actions of Arpaio, Thomas, and Wilenchik in pursuing its harassing investigation of the newspaper, despite the concerns of attorneys like Carter Olson and those on the MCAO's Incident Review Committee, the obvious lack of merit to the claims, and the impact on Plaintiffs' constitutional and Arizona law rights.

### The Conspiracy Culminated: Late-Night Raids and Arrests by Arpaio's "Selective Enforcement Unit"

81.     On October 18, 2007—the same date Plaintiffs published the article revealing the subpoenas—Wilenchik filed a Motion in the Court for an Order to Show Cause.

82.     The Motion demanded that Judge Baca hold *The New Times* in contempt, issue arrest warrants for Mr. Lacey, Mr. Larkin, and three of their lawyers, and fine the newspaper what could amount to a bankrupting $90 million.

83.     The requested fine was a blatant attempt to use prosecutorial power to target and ruin the business enterprises of *The New Times*, a newspaper that had been labeled an "Anti-Arpaio" paper for publishing articles critical of Arpaio, Thomas, and Wilenchik.

---

[8] *See Samaritan Health System v. Sup. Ct.*, 182 Ariz. 219 (Ct. App. 1994).

DB04/811373.0002/363337.2

84. But, the ire of these public officials, whose feelings were too wounded by this "misbehaving" newspaper, could not await the Court's ruling on Wilenchik's Motion.

85. That same night, October 18, 2007, Defendants dispatched Arpaio's aptly named "Selective Enforcement Unit" in unmarked, black vehicles to arrest Plaintiffs and take them to jail.

86. There was no probable cause for the arrests and, certainly, no justification for them.

87. Misdemeanor violations that do not threaten lives are usually handled by the issuance of citations, not by commando raids, arrests, handcuffs, and jail cells in the dead of night.

88. Responsible prosecutors know these circumstances would never—never—justify such conduct.[9] Yet, that is exactly how Defendants chose to proceed. They threw their free press opposition into jail in an attempt to silence Plaintiffs' criticism of their abusive public practices, criticism that is both fundamental to, and fundamentally protected by, the Constitution.

89. The public outcry after the arrests quickly forced Thomas to "fire" Wilenchik from further County criminal cases (but not civil cases, where he continues to collect tax dollars representing the County and Sheriff through the good offices of his former employee, Thomas).

---

[9] Thomas referred to the jailing of Mr. Larkin and Mr. Lacey as "very disturbing"—noting that there had been "serious missteps taken" in the matter. He expressed no contrition for having actively facilitated the appointment of an ethically and legally conflicted Dennis Wilenchik to act as Arpaio's personal prosecutor. Nor did he admit the slightest understanding of a sentiment expressed nearly a century ago that encapsulates the corrupt moorings of his conduct in this case, to the letter. "A county attorney has no right to turn a defendant over to his enemies, after first having armed them with the entire power of the state to be used as they see fit in his prosecution." *Hartgraves v. State*, 114 P. 343, 346 (Okla. 1911).

90. The ethically corrupt and dangerous actions for which Thomas was later forced to fire Wilenchik were not, as Thomas sheepishly urged, a bolt from the blue. They were the perfectly foreseeable consequence of Arpaio's vengeance toward the newspaper and Thomas and Wilenchik's glaring conflicts of interest. What Thomas could not foresee when he secured the appointment of Wilenchik was that *The New Times* would courageously resist Wilenchik's tactics, the public and the press would become enraged with this blatant assault on a free press, and Thomas would be forced to fire Wilenchik and abandon an investigation that he was told should never have been undertaken in the first place.

91. Thomas eagerly disavowed knowledge or authorization of Wilenchik's actions in his October 20 news conference, instead claiming he was merely acting in an administrative capacity:

> There is a right way and a wrong way to bring prosecution, and to hold people accountable for their offenses. And what happened here was the wrong way. I do not condone it, I do not defend it. And so it ends today.

92. Of course Arpaio, too, disavowed advance knowledge of the subpoenas and denied that he ordered the arrests, even though Wilenchik has publicly claimed the arrests were conducted, authorized, approved, and/or directed by Arpaio and/or his aides.

93. Wilenchik also denied ordering the arrests, and claimed that his issuance of subpoenas outside the grand jury process was inadvertent and accidental, although his office filed a Motion asking for such relief earlier in the day and Wilenchik's staff admits that they advised the Sheriff with respect to the arrests. And Wilenchik's former partner, William French, disagreed and later confirmed that Wilenchik did indeed authorize and advise Arpaio to conduct the arrests by the "Selective Enforcement Unit"—the same arrests Wilenchik specifically sought in his Order to Show Cause Motion filed hours before the arrests occurred.

94. The investigation, pursuit, and arrests of *The New Times* was unjustified and unwarranted. It was the product of a conspiracy among Defendants.

95. All of the Defendants are responsible for violating Plaintiffs' rights.

96. Arpaio is the Sheriff who persistently pushed for this political persecution of a newspaper that criticized him too often and was asking too many questions about his curious cash real estate transactions. His Office pressured attorneys to pursue the matter, despite obvious problems with the case and concerns about the legality of an investigation or criminal charge. He advocated and pushed for the hiring of his friend, ally, and personal counsel, Dennis Wilenchik, as Special "Independent" Deputy County Attorney and lead investigator. And his Office and his "Selective Enforcement Unit" made the late-night arrests and jailings.

97. Wilenchik was the "Independent" Special Deputy Maricopa County Attorney who so eagerly did the bidding of Thomas and the Sheriff, in their attempt to punish and financially ruin a newspaper that was too often critical of him. He filed odious papers in Court and issued unlawful subpoenas during the investigatory stage of the case, when no charges had been filed, no indictments issued, and without any involvement by a grand jury. He advised and counseled Arpaio to conduct the late night arrests and jailings and/or ordered that the arrests occur. He targeted the newspaper's readers and attempted to put the newspaper out of business.

98. And, Thomas is the elected County Attorney who actively sought the appointment of Wilenchik to prosecute this annoying newspaper, in a highly questionable case, under a facially inapplicable statute, with no reasonable likelihood of conviction—a case he knew was contaminated by the same "conflict of interest" for both he and Wilenchik. He had administrative oversight of the case, yet failed to properly supervise Wilenchik, failed to ensure he was properly trained and capable of handling a criminal investigation, and failed to

21

provide him with training and supervision necessary to ensure that the criminal investigation was conducted constitutionally and in conformance with Arizona and federal law.

99. Thus, all of these Defendants share responsibility for the violations of Arizona and federal law in this case, and for the assault on the constitutional rights of Plaintiffs and on the rights of *The New Times'* officers, reporters, and readers.

### Defendants' Pattern and Practice of Misusing Their Power to Punish & Suppress Political Opposition

100. This is not the first time these Defendants have abused their authority to obtain financial, political, and other benefits and retaliate against their political opponents. In fact, they have a custom, pattern, and practice of doing so.

101. For example, the Sheriff once authorized deputies to conduct surveillance on two men, Tom Bearup and Ernest Hancock, who expressed interest in running against him, including tapping their phones, tailing them, and searching their trash. The Sheriff's Office labeled them a "threat" to the Sheriff—even tapping the phones of a campaign aide to Bearup, Jim Cozzolino. Eventually, Mr. Cozzolino was arrested and served time in jail under highly-suspect circumstances. When he was released, he sued the Sheriff's Office for violating his constitutional rights, a lawsuit the Sheriff's Office quickly settled.

102. Arpaio has also targeted others in the press who criticize or oppose him. For example, the same night that Plaintiffs were arrested and jailed, Arpaio dispatched his "Selective Enforcement Unit" to issue *The New Times* reporter Ray Stern—in the middle of the night—a citation for disorderly conduct, simply for arguing with MCSO's lawyer, Michele Iafrate, earlier in the day about whether or not he was permitted *to photograph public records*. The MCAO initially denied knowing about the citation or the matter. But, the charges have not been dropped and the case against Mr. Stern continues to date. And Mr. Stern is not alone.

DB04/811373.0002/363337.2

1  Other reporters and newspapers, including (among others and without limitation) the *The West Valley View*, *The Arizona Republic*, and Channel 12 have been targeted or stonewalled by Arpaio for seeking public records and publishing stories that were critical of him.

103. Christy Fritz, too, was a target of Defendants' political retaliation. Two weeks before the November 2006 election, Sheriff's deputies arrived at her home and confiscated her computers, utility bills, emails, and financial records. But Fritz was neither a drug dealer nor a criminal; she was simply a graphic designer. Her problem: She worked for a Democrat, Jackie Thrasher. Ms. Thrasher was running against Jim Weiers, the father of a Maricopa County Sheriff's Deputy and an Arpaio ally. Ms. Thrasher had been endorsed by the Arizona Conference of Police and Sheriffs, but not Sheriff Arpaio. When one of her campaign mailers showed a corrections officer talking with her in front of an MCSO car, Mr. Weiers complained. So, Arpaio launched an investigation that included hours of interviews and resulted in three raids on the homes of the corrections officer in the picture, the corrections officer's mother, and Christy Fritz. Despite the issuance of three search warrants and the seizure of four computers, no charges were ever filed.

104. Indeed, for these Defendants, no political opponent is beyond the reach of their power. Their targets have ranged from the ACLU to members of the judiciary. In October 2007, they used Wilenchik to attack a Superior Court Judge, the Honorable Timothy Ryan. Judge Ryan, the County's Associate Presiding Criminal Judge, and other members of the bench had been attempting to instill standards that would require law enforcement to prove that aliens are, in fact, illegal, before they are denied bail under new laws. But, that constitutional protection is contrary to Arpaio's and Thomas' popular political stance on immigration issues. As a result, Thomas and Wilenchik unleashed an outrageous political attack on Judge Ryan and attempted to disqualify not only him, but every single judge in the Maricopa County Superior Court.

DB04/811373.0002/363337.2


105. These and many other incidents (among others and without limitation) show that Defendants' actions against *The New Times* in this case were more than the aberrational consequence of simple neglect; they were the product of a long-standing pattern and practice of the abuse of power against dissenting voices—of intentional, punitive, and retaliatory conduct against the newspaper, its reporters and its readers, for their own benefit and gain.

## COUNT I

### (Negligence – All Defendants)

106. Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

107. Defendants have statutory and common law duties of care to Plaintiffs and all citizens, including those citizens who read *The New Times*, when performing the functions of their positions. Defendants also owe a duty of care to Plaintiffs with respect to conducting criminal investigations.

108. Defendants are also legally responsible for the management of the criminal investigation system in Maricopa County, and the establishment and implementation of policies, procedures, and protocols that govern the investigation, processing, handling, and management of criminal investigations and prosecutions under their control. Their responsibilities include making certain that such policies, procedures, and protocols satisfy all federal and state standards.

109. Defendants Arpaio, MCSO, Thomas, and/or MCAO are legally responsible for the screening, hiring, training, retaining, and supervision of all employees and agents who have responsibility for the investigation, processing, handling, and management of criminal investigations and prosecutions under their control. This responsibility includes making certain that such screening, hiring, training, retaining, and supervision of such employees and agents satisfy all federal and state standards.

110. Defendants breached their duties owed to Plaintiffs, as alleged in this Complaint, by (*inter alia*), failing to conduct the duties of their positions with reasonable care; failing to

24

establish and implement proper policies, procedures, and protocols governing the investigation, processing, handling, and management of criminal investigations and prosecutions in their control; and failing to properly screen, hire, train, retain, and supervise employees and agents who have responsibility for the investigation, processing, handling, and management of criminal investigations and prosecutions in their control.

111.  Defendants' breaches of their duties owed to Plaintiffs caused Plaintiffs to suffer harm in an amount to be proven at trial.

## COUNT II
### (Gross-Negligence—All Defendants)

112.  Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

113.  Defendants have statutory and common law duties of care to Plaintiffs and all citizens when performing the functions of their positions. Defendants also owe a duty of care to Plaintiffs with respect to conducting criminal investigations.

114.  Defendants are also legally responsible for the management of the criminal investigation system in Maricopa County, and the establishment and implementation of policies, procedures, and protocols that govern the investigation, processing, handling, and management of criminal investigations and prosecutions in their control. Their responsibilities include making certain that such policies, procedures, and protocols satisfy all federal and state standards.

115.  Defendants Arpaio, MCSO, Thomas, and/or MCAO are legally responsible for the screening, hiring, training, retaining, and supervision of all employees and agents who have responsibility for the investigation, processing, handling, and management of criminal investigations and prosecutions in their control. This responsibility includes making certain that such screening, hiring, training, retaining, and supervision of such employees and agents satisfy all federal and state standards.

116.  Defendants were grossly negligent in breaching their duties owed to Plaintiffs, as

25

alleged in this Complaint, by (*inter alia*), failing to conduct the duties of their positions with reasonable care; failing to establish and implement proper policies, procedures, and protocols governing the investigation, processing, handling, and management of criminal investigations and prosecutions in their control; and failing to properly screen, hire, train, retain, and supervise employees and agents who have responsibility for the investigation, processing, handling, and management of criminal investigations and prosecutions in their control.

117. Defendants breached their duties with actual or constructive knowledge that their acts and/or omissions would result in harm to Plaintiffs.

118. Defendants' gross negligence caused Plaintiffs to suffer harm in an amount to be proven at trial.

## COUNT III

**(Violations of 42 U.S.C. § 1983: Unconstitutional Policies, Customs, and Failure to Train—Arpaio, MCSO, Thomas, and/or MCAO)**

119. Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

120. Sheriff Arpaio is a policy maker for the MCSO. Sheriff Arpaio has the authority and responsibility to establish policy for the MCSO, and to properly supervise and train the officers, agents, and employees of the MCSO. His actions are the actions of the MCSO.

121. Andrew Thomas is a policy maker for the MCAO. He has the authority and responsibility to establish policy for the MCAO, and to properly supervise and train the officers, agents, and employees of the MCAO. His actions are the actions of the MCAO.

122. Sheriff Arpaio and Andrew Thomas were acting under color of law at all times material hereto.

123. Sheriff Arpaio and Andrew Thomas are each named in their official capacity, as well as their individual capacity, pursuant to 42 U.S.C. § 1983 supervisory and direct liability, for their conduct as alleged herein.

124. Sheriff Arpaio, the MCSO, Andrew Thomas, and/or MCAO have oversight and

DB04/811373.0002/363337.2

supervisory responsibility over their jails and the investigation, processing, handling, and management of criminal investigations and prosecutions in their control, and the proper screening, hiring, training, retaining, and supervision of the officers, employees, and agents investigating, processing, handling, and managing such criminal investigations and prosecutions.

125. Sheriff Arpaio, the MCSO, Andrew Thomas, and/or MCAO were deliberately and callously indifferent to Plaintiffs and the readers of *The New Times* in training (or failing to train) their officers, agents, and employees in, among other things and without limitation, the appropriate, lawful and constitutional policies, procedures, and protocols for investigating, processing, handling, and managing of criminal investigations and prosecutions in their control.

126. Sheriff Arpaio, the MCSO, Andrew Thomas, and/or MCAO were deliberately and callously indifferent to Plaintiffs and readers of *The New Times* through fostering, encouraging and knowingly accepting formal and informal policies, procedures, practices, or customs condoning indifference to the rights of the subjects of criminal investigations and prosecutions under their control.

127. Sheriff Arpaio, the MCSO, Andrew Thomas, and/or MCAO knew and should have known that unconstitutional policies, practices, customs, and training existed, yet failed to properly address them and/or failed to establish and implement appropriate policies, procedures, protocols, and training governing the investigation, processing, handling, and management of criminal investigations and prosecutions in their control.

128. Sheriff Arpaio, the MCSO, Andrew Thomas, and/or MCAO knew and should have known that unconstitutional policies, practices, customs, and training existed with respect to the screening, hiring, training, retaining, and supervision officers, employees, and agents who have responsibility for the investigation, processing, handling, and management of criminal investigations and prosecutions in their control, yet failed to properly address them and/or failed to establish and implement appropriate policies, procedures, protocols, and

27

training to remedy them.

129. Sheriff Arpaio, the MCSO, Andrew Thomas, and/or MCAO permitted the implementation of inappropriate, unconstitutional, *de facto* policies which: authorized, approved, condoned, and/or ratified unconstitutional criminal investigation and prosecution practices, and failed to adequately train and supervise their personnel in this and other areas.

130. This deliberate, reckless and callously indifferent failure to train in these (and others without limitation) areas, and the condoning of such policies or customs as described herein, caused, substantially contributed to, and/or was the moving force behind the violations of Plaintiffs' rights.

131. The wrongful conduct of Defendants alleged herein constitutes violations of 42 U.S.C. § 1983, in that with deliberate and callous indifference, Defendants deprived Plaintiffs of the rights, privileges, and immunities secured to them by the Constitution and laws of the United States.

132. The wrongful conduct of Defendants alleged herein constitutes violations of the United States Constitution, Art. IV, § 2, in that Plaintiffs were denied privileges and immunities granted to all citizens of the United States.

133. The wrongful conduct of Defendants alleged herein constitutes violations of the United States Constitution, Amendment I, in that Plaintiffs were deprived of their right to free speech and free press.

134. The wrongful conduct of Defendants alleged herein constitutes violations of the United States Constitution, Amendment IV, in that Plaintiffs were subjected to false imprisonment and arrest, malicious prosecution, and retaliatory conduct from law enforcement, and were arrested and jailed without proper cause and in an attempt to chill Plaintiffs' free speech and criticism of public officials and intrude upon the privacy rights of all private citizens who read *The New Times*.

135. The acts and omissions of Sheriff Arpaio and Andrew Thomas, acting in their individual capacities, were malicious or reckless in disregard of the rights of Plaintiffs.

DB04/811373.0002/363337.2

136. Punitive damages in an amount to be determined by a jury should be awarded against Defendants to punish them for wrongdoing and to prevent them and others from acting in a similar manner in the future.

## COUNT IV

**(Violations of 42 U.S.C. § 1983: Free Speech and Free Press, Law Enforcement Retaliatory Conduct, False Arrest and Imprisonment, Malicious Prosecution, and Abuse of Process – All Defendants)**

137. Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

138. At all times material hereto, Defendants Sheriff Arpaio, Andrew Thomas, and Dennis Wilenchik were acting under color of law.

139. The wrongful conduct of these Defendants alleged herein constitutes violations of 42 U.S.C. § 1983, in that with deliberate and callous indifference, they deprived Plaintiffs of the rights, privileges, and immunities secured to them by the Constitution and laws of the United States.

140. The wrongful conduct of these Defendants alleged herein constitutes violations of the United States Constitution, Art. IV, § 2, in that Plaintiffs were denied privileges and immunities granted to all citizens of the United States.

141. The wrongful conduct of these Defendants alleged herein was undertaken with malice, in an attempt to deter conduct protected by the Constitution, and/or in order to silence and chill speech and invade the privacy of Plaintiffs and their readers, and, therefore, constitutes violations of the United States Constitution, Amendment I, in that Plaintiffs were deprived of privileges and immunities guaranteed to all citizens of the United States. Plaintiffs were criminally investigated, prosecuted, jailed, arrested, and/or persecuted by Defendants for exercising their rights to free speech and free press.

142. The wrongful conduct of these Defendants alleged herein was undertaken with malice and/or in an attempt to deter conduct protected by the Constitution and, therefore,

constitutes violations of the United States Constitution, Amendments I, IV, and/or XIV, in that Plaintiffs were deprived of privileges and immunities guaranteed to all citizens of the United States. Plaintiffs were subjected to false imprisonment and arrest, malicious prosecution, and/or retaliatory conduct from law enforcement for exercising their right to free speech and free press. Plaintiffs were investigated, prosecuted, arrested, and/or jailed without proper or probable cause.

143. The wrongful conduct of these Defendants alleged herein was undertaken with malice and/or in an attempt to deter conduct protected by the Constitution and, therefore, constitutes violations of the United States Constitution, in that Plaintiffs were deprived of privileges and immunities guaranteed to all citizens of the United States. Plaintiffs were subjected to Defendants' abuse of process in a particularly egregious, conscience-shocking manner.

144. The acts and omissions of these Defendants, acting in their individual capacities and under color of law, were malicious, punitive, in reckless disregard of Plaintiffs' rights and the rights of all those private citizens who read speech and criticism and intrude upon the privacy rights of all private citizens who read *The New Times*, and/or in an effort to intentionally deter conduct that was protected by the Constitution.

145. As a result, punitive damages in an amount to be determined by a jury should be awarded against Defendants to punish them for wrongdoing and to prevent them and others from acting in a similar manner in the future.

## COUNT V

**(Conspiracy to Commit Violations of 42 U.S.C. § 1983-All Defendants)**

146. Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

147. The wrongful conduct of Defendants as alleged herein were undertaken pursuant to an agreement or meeting of the minds among Defendants to act in concert to violate Plaintiffs' constitutional rights, silence Plaintiffs' criticism of them, chill free speech, invade

30

the privacy of those private citizens who read *The New Times*, and interfere with and financially ruin Plaintiffs' business.

148. Defendants' acts and/or omissions as alleged herein to pursue and conduct a criminal investigation and prosecution of *The New Times*, including (without limitation) the arrests and jailings, were undertaken pursuant to a conspiracy among Defendants to violate Plaintiffs' constitutional rights.

149. As a direct and proximate cause of Defendants' conspiracy, Plaintiffs' constitutional rights were violated.

150. The acts and omissions of Arpaio, Thomas, and Wilenchik in furtherance of their conspiracy, acting in their individual capacities and under color of law, were malicious and/or in reckless disregard of Plaintiffs' rights and the rights of private citizens and intruded upon the privacy rights of all citizens who read *The New Times*.

151. As a result, punitive damages in an amount to be determined by a jury should be awarded against Defendants to punish them for wrongdoing and to prevent them and others from acting in a similar manner in the future.

## COUNT VI

**(Violations of Arizona Law: False Arrest and Imprisonment, Malicious Prosecution, and Abuse of Process-All Defendants)**

152. Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

153. The wrongful conduct of these Defendants alleged herein constitutes violations of Arizona law, in that Defendants unlawfully detained Plaintiffs without consent, without lawful authority, without valid legal process, and without probable or proper cause; unlawfully and maliciously initiated criminal proceedings against Plaintiffs without probable cause that terminated in Plaintiffs' favor and harmed Plaintiffs; and willfully used the judicial process and/or criminal proceedings against Plaintiffs for a punitive, improper, and ulterior purpose not proper in the regular conduct of such process and proceedings.

31

154. As a direct and proximate result of Defendants' acts and omissions alleged herein, Plaintiffs have been damaged in an amount to be proven at trial.

155. Defendants' acts and omissions herein were undertaken with malice, in bad faith, and with the requisite evil mind sufficient to warrant the imposition of punitive damage to deter their conduct and that of others in the future.

## COUNT VII

**(Racketeering Violations under 18 U.S.C. §§ 1961, *et seq.* & A.R.S. §§ 13- 2301, *et seq.* – All Defendants)**

156. Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

157. As set forth in detail in this Complaint, Defendants have engaged in a pattern of unlawful activity in order to obtain financial, political, and/or other gains that have resulted in harm and injury to Plaintiffs.

158. Such a pattern of unlawful activity includes, but is not limited to, a series of repeated disguised campaign contributions, malicious prosecutions and abuses of process, false imprisonments and arrests, asserting false claims, fraudulent schemes, practices, and artifices, and extortions under color of official right, which have occurred over at least the last several years, are ongoing, and will likely continue in the future.

159. Defendants undertook such unlawful activity as an association-in-fact and/or an enterprise with a common purpose. Each of the Defendants conducted or participated, directly and/or indirectly, in the conduct of the association-in-fact and/or enterprise.

160. As a direct and proximate result of Defendants' pattern of unlawful activity as alleged herein, Plaintiffs have been injured and sustained monetary damages in an amount to be proven at trial.

DB04/811373.0002/363337.2

161. Defendants' acts and omissions as alleged herein constitute violations of 18 U.S.C. §§ 1861, *et seq.* and A.R.S. §§ 12-2301, *et seq.*

162. Pursuant to 18 U.S.C. § 1964(c) and A.R.S. § 12-2314.01, Plaintiffs are entitled to an award of treble damages.

163. Pursuant to 18 U.S.C. § 1964(c) and A.R.S. § 13-2314.01, Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs.

### Jury Trial

164. Plaintiffs hereby request a trial by jury.

### Prayer for Relief

WHEREFORE, Plaintiffs pray for damages for judgment against Defendants as follows:

A. General damages in an amount to be proven at trial;

B. Punitive damages in an amount deemed just and reasonable against the individual Defendants as to the causes of action alleged herein;

C. Costs and attorneys' fees against all Defendants as to the causes of action alleged under the Constitution and laws of the United States, pursuant to 42 U.S.C. § 1988;

D. Treble damages and attorneys' fees against all Defendants as to the causes of action alleged under 18 U.S.C. § 1961, *et seq.* and A.R.S. § 13-2301, *et seq.*

E. The costs of litigation;

F. All remedies provided by 42 U.S.C. §§ 1983, 18 U.S.C. §§ 1961, *et seq.*, and A.R.S. § 13-2301, *et seq.*; and

G. Such other and further relief which may seem just and reasonable under the circumstances.

…

…

1  RESPECTFULLY SUBMITTED this 29th day of April, 2008.

2                                                    **STINSON MORRISON HECKER LLP**

3

4                                           By: _/s/ Michael C. Manning_
                                                 Michael C. Manning
5                                                Leslie E. O'Hara
                                                 John T. White
6                                                1850 North Central Avenue, Suite 2100
                                                 Phoenix, Arizona 85004-4584
7                                                Attorneys for Plaintiffs

8  ORIGINAL filed this 29th day of April,
9  2008:

10 Clerk of the Court
   Maricopa County Superior Court
11 101/201 West Jefferson
   Phoenix, Arizona  85003
12
13 _Kathleen Kaupke_
14

34