1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

9

Michael Lacey; Jim Larkin; and Phoenix)     No. CV-08-00997-PHX-SRB
New Times, LLC,                          )
10                                       )     **ORDER**
                    Plaintiffs,          )
11                                       )
    vs.                                  )
12                                       )
                                         )
13   Sheriff Joseph Arpaio and Ava Arpaio,)
    husband and wife; *et al.*,          )
14                                       )
                    Defendants.          )
15                                       )
                                         )
16   _____)

17          This matter comes before the Court on Defendants Maricopa County Attorney's

18   Office, Andrew Thomas, and Ann Thomas's Motion to Dismiss Pursuant to Rule 12(b)(6)

19   of the Federal Rules of Civil Procedure (Doc. 8), the Motion to Dismiss Defendants Arpaio

20   and the Maricopa County Sheriff's Office (Doc. 12), and Defendants Dennis Wilenchik and

21   Becky Bartness's Motion to Dismiss (Doc. 15).   The Court now considers Defendants'

22   Motions.

23   **I.      BACKGROUND**

24          Plaintiffs Michael Lacey ("Lacey") and Jim Larkin ("Larkin") are officers, executives,

25   editors, and owners of the Phoenix New Times, LLC, ("*The New Times*") a Delaware

26   Company, doing business in Maricopa County, Arizona.   Defendant Joseph Arpaio

27   ("Arpaio") is the Sheriff of Maricopa County, and Defendant Andrew Thomas ("Thomas")

28   is the Maricopa County Attorney.   Defendant Dennis Wilenchik ("Wilenchik") was

1   appointed by Thomas as a Special Deputy Maricopa County Attorney for the purpose of

2   investigating Plaintiffs' publication of Arpaio's home address.[1]

3       Plaintiffs allege that they investigated and published an article critical of Arpaio's

4   commercial land transactions on July 8, 2004.  (Compl. at 6-7.)  The article questioned

5   Arpaio's motive for redacting information from the County Recorder's public records about

6   his commercial land holdings.  (Compl. at 7.)  Plaintiffs allege that Arpaio justified the

7   redaction by citing his concern about death threats.  (Compl. at 7.)  The article questioned

8   whether it made sense for Arpaio to remove this information from public records based on

9   his purported fear of death threats, while at the same time Arpaio's personal address

10  remained available on several public websites. (Compl. at 7.) The article published Arpaio's

11  personal address, which was obtained from public websites, in print and online.  (Compl. at

12  7.) Plaintiffs allege that Arpaio was never under any credible threat of imminent harm, and

13  that the publication of his personal information did not violate Arizona law.  (Compl. at 7-8.)

14      Arpaio met with Thomas in January 2005, after Thomas took office as Maricopa

15  County Attorney.  (Compl. at 8-9.)  Plaintiffs allege that Arpaio discussed his opposition to

16  *The New Times* and his desire to "punish" the newspaper.  (Compl. at 9.)  Plaintiffs allege

17  that Thomas's staff investigated, but had concerns that there was no evidence of an imminent

18  and serious threat to Arpaio.  (Compl. at 9.)  Plaintiffs allege that Arpaio requested an

19  investigation in April 2005.  (Compl. at 9.) In May 2005 Thomas's staff prepared an Incident

20  Review Memo, which summarized the weaknesses of the case against Plaintiffs and noted

---

[1]A.R.S. § 13-2401(A) provides that:

> It is unlawful for a person to knowingly make available on the world wide web the personal information of a peace officer, justice, judge, commissioner, public defender or prosecutor if the dissemination of the personal information poses an imminent and serious threat to the peace officer's, justice's, judge's, commissioner's, public defender's or prosecutor's safety or the safety of that person's immediate family and the threat is reasonably apparent to the person making the information available on the world wide web to be serious and imminent.

A violation of subsection A is a class 5 felony.  A.R.S. § 13-2401(C).

1   that Arpaio demanded prosecution. (Compl. at 9.)  The Incident Review Board declined

2   prosecution on August 9, 2005.  (Compl. at 10.)

3          Plaintiffs allege that Thomas recognized a conflict of interest based on *The New*

4   *Times'*s investigation and criticism of Thomas.  (Compl. at 10.)  Thomas referred the

5   investigation to the Pinal County Attorney's Office, and Arpaio allegedly encouraged the

6   investigation. (Compl. at 10.) The Pinal County Attorney's Office decided not to prosecute,

7   and the matter was returned to the Maricopa County Attorney's Office ("MCAO").  (Compl.

8   at 11.)  Thomas appointed Wilenchik as an independent Special Deputy Maricopa County

9   Attorney to investigate and prosecute Plaintiffs for the online publication of Arpaio's home

10  address. (Compl. at 11.) Plaintiffs allege that Wilenchik had previously hired Thomas as an

11  associate in his law firm while Thomas was campaigning for his position as Maricopa

12  County Attorney, and that Wilenchik received more than $2,350,000 in attorneys' fees from

13  the MCAO.  (Compl. at 12-13.)  Plaintiffs allege that Wilenchik also acted as unpaid

14  personal counsel to Arpaio and Thomas, and that he had demanded a retraction of an article

15  critical of Thomas in *The New Times*.  (Compl. at 13.)

16         On August 24, 2007 Wilenchik authored and approved two grand jury subpoenas,

17  demanding  records and documents related to articles published in *The New Times* that were

18  critical of Arpaio, as well as information concerning readers who had visited *The New*

19  *Times'*s website to view articles related to Arpaio.  (Compl. at 14-15.)  Plaintiffs allege that

20  these subpoenas were overbroad, and were issued without notice to or approval of any court

21  or grand jury.  (Compl. at 15.)  They argue that under Arizona law, a prosecutor seeking

22  grand jury evidence by subpoena must either secure the prior permission of the grand jury

23  or must notify the grand jury foreperson and the presiding criminal judge within ten days of

24  issuing a subpoena unilaterally.  (Compl. at 17.)  On September 20, 2007, *The New Times*

25  published an article critical of Wilenchik's conduct defending Arpaio and others in a

26  defamation suit brought by Buckeye Police Chief Dan Saban.  (Compl. at 15.)  Wilenchik

27  then issued another grand jury subpoena to the author of the article, seeking all documents

28  and records related to the article.  (Compl. at 16.)  Plaintiffs allege that Wilenchik made an

*ex parte* attempt to influence Judge Anna Baca, who was presiding over the County grand jury, by asking Carol Turoff to contact Judge Baca at home to arrange a private meeting with Wilenchik. (Compl. at 16.) Plaintiffs allege that in a hearing on October 11, 2007, Judge Baca called Wilenchik's attempt to initiate *ex parte* communications "absolutely inappropriate." (Compl. at 16.)

On October 18, 2007, *The New Times* published the contents of the grand jury subpoenas. (Compl. at 17.) Unlawful grand jury disclosure is a misdemeanor.[2] A.R.S. § 13-2812(B). On October 18, 2007, Wilenchik filed a motion in the court for an order to show cause, demanding that Judge Baca hold Plaintiffs in contempt, issue arrests warrants for Lacey, Larkin, and their lawyers, and fine *The New Times* up to $90 million. (Compl. at 18.) Plaintiffs allege that during the night of October 18, Defendants sent Arpaio's Selective Enforcement Unit in unmarked vehicles to arrest Plaintiffs at their homes and take them to jail. (Compl. at 19.) Plaintiffs allege that misdemeanor violations that do not threaten lives are usually handled by the issuance of citations, rather than arrest and incarceration. (Compl. at 19.) After a public outcry in response to the arrests, Thomas dismissed Wilenchik from further criminal work for the County. (Compl. at 19.) Thomas acknowledged that Wilenchik had brought prosecution in "a wrong way" with "serious missteps," and found the arrests "very disturbing." (Compl. at 19-20.) Plaintiffs allege that Arpaio disavowed advance knowledge of the subpoenas, and that both Arpaio and Wilenchik denied ordering the arrests. (Compl. at 20.) Plaintiffs allege that despite this denial, Wilenchik advised and authorized Arpaio to conduct the arrests. (Compl. at 20.) Plaintiffs allege that Defendants conspired

---

[2]A.R.S. § 13-2812(A) provides that:

> A person commits unlawful grand jury disclosure if the person knowingly discloses to another the nature or substance of any grand jury testimony or any decision, result or other matter attending a grand jury proceeding, except in the proper discharge of official duties, at the discretion of the prosecutor to inform a victim of the status of the case or when permitted by the court in furtherance of justice.

1  to investigate and arrest Plaintiffs because of their political criticism of Arpaio and Thomas.

2  (Compl. at 21-22.)

3        Plaintiffs' Complaint alleges claims for negligence, gross negligence, violations of 42

4  U.S.C. § 1983, conspiracy to commit violations of § 1983, false arrest and imprisonment,

5  malicious prosecution, abuse of process, and racketeering violations under 18 U.S.C. § 1961,

6  *et seq.* and A.R.S. §§ 13-2301, *et seq.*   (Docs. 1-3.)   Arpaio and the Maricopa County

7  Sheriff's Office ("MCSO") argue that the MCSO is a non-jural entity and must be dismissed

8  from this action.   With respect to Plaintiffs' state law claims, they argue that the notice of

9  claim is insufficient, that Plaintiffs fail to state a claim, and that punitive damages are

10  unavailable.   With respect to Plaintiffs' federal claims, they argue that Plaintiffs have failed

11  to allege a constitutional violation, that Arpaio is entitled to qualified immunity, and that

12  punitive damages are unavailable.   Defendants Andrew and Ann Thomas and the MCAO

13  argue that Andrew Thomas has absolute prosecutorial immunity, that the Maricopa County

14  Attorney's Office is a non-jural entity, that Plaintiffs' racketeering claim fails as a matter of

15  law, that punitive damages are unavailable, and that Plaintiffs' notice of claim is insufficient.

16  Defendants Dennis Wilenchik and Becky Bartness argue that Wilenchik is entitled to

17  absolute or qualified immunity as a special prosecutor, that Plaintiffs' notice of claim is

18  insufficient, and that Plaintiffs failed to state a claim under 42 U.S.C. § 1983 and state law.

19  Wilenchik and Bartness also join in Thomas and Arpaio's Motions to Dismiss.

20  **II.     LEGAL STANDARDS AND ANALYSIS**

21        **A.   Rule 12(b)(6) Motion to Dismiss**

22        The Federal Rules of Civil Procedure require a "short and plain statement of the claim

23  showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Gilligan v. Jamco Dev.*

24  *Corp.,* 108 F.3d 246, 248 (9th Cir. 1997).   Thus, dismissal for insufficiency of a complaint

25  is proper if the complaint fails to state a claim on its face. *Lucas v. Bechtel Corp.*, 633 F.2d

26  757, 759 (9th Cir. 1980).   A Rule 12(b)(6) dismissal for failure to state a claim can be based

27  on either: (1) the lack of a cognizable legal theory; or (2) insufficient facts to support a

28

1  cognizable legal claim.  *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.

2  1990); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

3  　　　　In determining whether an asserted claim can be sustained, all allegations of material

4  fact are taken as true and construed in the light most favorable to the non-moving party.

5  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994).  As for the factual

6  allegations, the Supreme Court has explained that they "must be enough to raise a right to

7  relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).

8  In ruling on a motion to dismiss, the issue is not whether the plaintiff will ultimately prevail,

9  but whether the claimant is entitled to offer evidence to support the claims. *Gilligan*, 108

10  F.3d at 249.

11  　　**B.   MCAO and MCSO are Non-Jural Entities**

12  　　　　MCAO and MCSO argue that they are non-jural entities and are not subject to suit.

13  The capacity of an entity to sue or be sued shall be determined "by the law of the state where

14  the court is located."  Fed. R. Civ. P. 17(b)(3).  Plaintiffs argue that MCAO and MCSO are

15  jural entities under Arizona law because they are political subdivisions under the three-part

16  test in *McClanahan v. Cochise Coll.*, 540 P.2d 744, 747 (Ariz. Ct. App. 1975).  However, a

17  political subdivision cannot be sued unless it is a separate and distinct legal entity.  *See*

18  *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991).  MCAO and MCSO

19  are administrative subdivisions of the county, and Plaintiffs have failed to show that they are

20  jural entities separate from Maricopa County.  The Court concludes that MCAO and MCSO

21  are non-jural entities and must be dismissed from this action.

22  　　**C.   Absolute Immunity**

23  　　　　**1.   Thomas**

24  　　　　Officials seeking absolute immunity bear the burden of demonstrating that they are

25  entitled to such protection.  *Goldstein v. City of Long Beach*, 481 F.3d 1170, 1173 (9th Cir.

26  2007).  Entitlement to absolute prosecutorial immunity turns on "'the nature of the function

27  performed, not the identity of the actor who performed it.'" *Buckley v. Fitzsimmons*, 509 U.S.

28  259, 269 (1993) (quoting *Forrester v. White*, 484 U.S. 219, 224 (1988)).  Prosecutors enjoy

1   absolute immunity from liability under § 1983 and state law claims for conduct that is
2   "'intimately associated with the judicial phase of the criminal process.'"  *Id*. at 270 (quoting
3   *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *State v. Sup. Ct. of the State, In & For the*
4   *County of Maricopa*, 921 P.2d 697, 700 (Ariz. Ct. App. 1996).  The United States Supreme
5   Court has held that prosecutors participating in a probable cause hearing are entitled to
6   absolute immunity, but they are not entitled to absolute immunity when giving legal advice
7   to the police.  *Burns v. Reed*, 500 U.S. 478, 491-93 (1991).  A prosecutor's acts in preparing
8   to initiate a prosecution and present the state's case may be absolutely immune, but acts of
9   investigation or administration would not be immune.  *Buckley*, 509 U.S. at 270. (citing
10  *Imbler*, 424 U.S. at 431).  "[W]hen a prosecutor 'functions as an administrator rather than
11  as an officer of the court' he is entitled only to qualified immunity."  *Id*. at 273 (quoting
12  *Imbler*, 424 U.S. at 431).

13          The *Buckley* Court further explained:

14                  There is a difference between the advocate's role in evaluating
                evidence and interviewing witnesses as he prepares for trial, on the
15              one hand, and the detective's role in searching for the clues and
                corroboration that might give him probable cause to recommend that
16              a suspect be arrested, on the other hand. When a prosecutor performs
                the investigative functions normally performed by a detective or
17              police officer, it is "neither appropriate nor justifiable that, for the
                same act, immunity should protect the one and not the other."

18  509 U.S. at 273 (quoting *Hampton v. Chicago*, 484 F.2d 602, 608 (7th Cir. 1973)).
19  Therefore, "if a prosecutor plans and executes a raid on a suspected weapons cache, he 'has
20  no greater claim to complete immunity than activities of police officers allegedly acting
21  under his direction.'"  *Id*. at 274 (quoting *Hampton*, 484 F.2d at 608-09).
22          Plaintiffs allege that Thomas's office prepared an Incident Review Memo
23  summarizing the weaknesses of the case against *The New Times* for publishing Arpaio's
24  personal address. (Compl. at 9.)  Plaintiffs allege that Thomas referred the case to the Pinal
25  County Attorney's Office based on a conflict of interest, and then, after it was returned from
26  that office, hired Wilenchik as a Special Deputy Maricopa County Attorney. (Compl. at 10-
27  11.)  Plaintiffs also allege that Thomas failed to properly train and supervise Wilenchik.
28

(Compl. at 21-22.) Prosecutors enjoy absolute immunity for decisions to initiate a particular prosecution. *Goldstein*, 481 F.3d at 1173 (citing *Imbler*, 424 U.S. at 431 n.34). Although personnel decisions involving the termination or treatment of employees fall within the administrative function and are not entitled to absolute immunity, prosecutors do enjoy absolute immunity for the decision to remove a deputy attorney from a particular case. *Id.* (citing *Ceballos v. Garcetti*, 361 F.3d 1168, 1184 (9th Cir. 2004), *rev'd on other grounds*, 547 U.S. 410 (2006)). Thomas's decision to hire Wilenchik to handle a particular prosecution due to a conflict of interest falls within the prosecutorial function, because it is intimately associated with the judicial phase of the criminal process. *See Eldridge v. Gibson*, 332 F.3d 1019, 1021-22 (6th Cir. 2003). Therefore, Thomas is entitled to absolute immunity for his alleged decision to hire Wilenchik to prosecute the publication of Arpaio's home address.

With respect to the allegations of failure to train or supervise, "supervisory defendants are entitled to absolute immunity for 'conduct closely related to prosecutorial decisions in the trial phase of [the plaintiff's] case,' such as a claim 'that the supervisory defendants knew that [the prosecuting attorney] had granted [a witness] immunity in exchange for perjured testimony favorable to the prosecution,' or a claim 'that the supervisory defendants were aware of and condoned a ploy to use [a witness's] perjured testimony to force the recusal of [the plaintiff's] counsel of choice.'" *Goldstein*, 481 F.3d at 1174 (quoting *Genzler v. Longanbach*, 410 F.3d 630, 644 (9th Cir. 2005)). Plaintiffs' vague allegations regarding the failure to train or supervise do not allege that Thomas was aware of Wilenchik's conduct in issuing overly broad subpoenas or failing to follow grand jury procedures. Therefore, Thomas is entitled to absolute immunity and is dismissed from this action.

### 2. Wilenchik

Wilenchik also argues that he is entitled to absolute immunity. Plaintiffs argue that his conduct in issuing overly broad subpoenas was investigative, because the subpoenas were issued improperly, without the approval or involvement of the grand jury or the court. Wilenchik argues that allegations of bad faith or personal interest do not pierce absolute

1  immunity.  (Defs. Wilenchik and Bartness's Mot. to Dismiss at 8 (citing *Ashelman v. Pope*,

2  793 F.2d 1072, 1078 (9th Cir. 1986).)  While that may be the case, Wilenchik has failed to

3  show that the subpoenas were issued as part of the judicial phase of the criminal process,

4  since they were not presented or sent to the grand jury at any time.  Therefore, the Court

5  concludes that Wilenchik is not entitled to absolute prosecutorial immunity.  If a prosecutor

6  is not entitled to absolute immunity for having performed investigatory or administrative

7  functions, he may still be entitled to qualified immunity.  *Broam v. Bogan*, 320 F.3d 1023,

8  1028 (9th Cir. 2003) (citing *Buckley*, 509 U.S. at 273).

9  **D.   Qualified Immunity**

10  Wilenchik and Arpaio both argue that they are entitled to qualified immunity with

11  respect to Plaintiffs' claims for violations of their constitutional rights.  Qualified immunity

12  is "'an entitlement not to stand trial or face the other burdens of litigation.'"  *Saucier v. Katz*,

13  533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  The

14  privilege of qualified immunity is "'an immunity from suit rather than a mere defense to

15  liability.'"  *Id*.  Qualified immunity questions should be resolved "'at the earliest possible

16  stage in litigation.'"  *Id*. (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

17  When determining whether a defendant is entitled to qualified immunity, the

18  "threshold question" is: "Taken in the light most favorable to the party asserting the injury,

19  do the facts alleged show the officer's conduct violated a constitutional right?"  *Id*. at 201

20  (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).  The Supreme Court explains that:

21  
22  
23  
> If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

24  
25  *Id*.  "The relevant, dispositive inquiry in determining whether a right is clearly established

26  is whether it would be clear to a reasonable officer that his conduct was unlawful in the

27  situation he confronted."  *Id*. at 202 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).

28

1   "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the
2   Constitution and laws of the United States, and must show that the alleged deprivation was
3   committed by a person acting under color of state law."   *West v. Atkins*, 487 U.S. 42, 48
4   (1988).

5   Arpaio and Wilenchik contend that they are protected by qualified immunity, arguing
6   that the facts alleged do not show that their conduct violated a constitutional right.   The
7   Complaint alleges violations of 42 U.S.C. § 1983 based on violations of the Free Speech
8   Clause of the First Amendment, the Fourth Amendment, and the Privileges and Immunities
9   Clause of the United States Constitution, Article IV § 2.   The Complaint also alleges that
10  Defendants violated 42 U.S.C. § 1983 by failing to supervise and train those who arrested
11  Plaintiffs, and by establishing official policies and customs that violated Plaintiffs' rights.

12  ### 1. Count IV: Privileges and Immunities Clause

13  Plaintiffs allege that Defendants violated the United States Constitution, Article IV,
14  § 2, "in that Plaintiffs were denied privileges and immunities granted to all citizens of the
15  United States." (Compl. at 29.)  "The Privileges and Immunities Clause gives constitutional
16  assurance that 'The Citizens of each State shall be entitled to all Privileges and Immunities
17  of Citizens in the several States.'"   *Utility Contractors Ass'n of New England, Inc. v. City of*
18  *Worcester*, 236 F. Supp. 2d 113, 116-17 (D. Mass. 2002) (quoting U.S. Const. art. IV, § 2,
19  cl. 1).  "It is the purpose of the Clause to protect, *inter alia*, the rights of citizens to pursue
20  a common calling, to hold and dispose of property, and to petition in the courts of states in
21  which they do not reside."   *Id.* (citing *Baldwin v. Fish & Game Comm'n of Mont.*, 436 U.S.
22  371, 383 (1978); *Blake v. McClung*, 172 U.S. 239, 249 (1898); *Canadian N. Ry. v. Eggen*,
23  252 U.S. 553, 563 (1920)).  "In a broad sense, the clause serves, in certain contexts, to
24  protect non-residents from discrimination."   *Haw. Boating Ass'n v. Water Transp. Facilities*
25  *Div., Dep't of Transp., Haw.*, 651 F.2d 661, 666 (9th Cir. 1981).  "'The primary purpose of
26  this clause . . . was to help fuse into one Nation a collection of independent, sovereign States.
27  It was designed to insure to a citizen of State A who ventures into State B the same privileges
28  which the citizens of State B enjoy.'"   *Id.* (quoting *Toomer v. Witsell*, 334 U.S. 385, 395

1   (1948)).  Plaintiffs have failed to allege facts showing that their rights under the Privileges

2   and Immunities Clause were violated by the conduct of either Arpaio or Wilenchik.

### 2. Count IV: First Amendment Free Speech and Free Press Rights

4          To show a violation of the First Amendment, Plaintiffs must "provide evidence

5   showing that 'by [their] actions [Defendants] deterred or chilled [Plaintiffs'] political speech

6   and such deterrence was a substantial or motivating factor in [Defendants'] conduct.'"

7   *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999) (quoting

8   *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994)).  However, "generally applicable

9   laws do not offend the First Amendment simply because their enforcement against the press

10  has incidental effects on its ability to gather and report the news."  *Cohen v. Cowles Media

11  Co.*, 501 U.S. 663, 669 (1991).

12         Plaintiffs may not avoid the application of A.R.S. § 13-2812(A) by invoking the First

13  Amendment, because there is no First Amendment right to publish the contents of a grand

14  jury subpoena.  *See United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 424 (1983) (noting that

15  the secrecy of grand jury proceedings underlies the proper functioning of the grand jury

16  system); *Branzburg v. Hayes*, 408 U.S. 665, 684-85 (1972) (noting that "the press is not free

17  to publish with impunity everything and anything it desires to publish" and that there is no

18  First Amendment right of access to grand jury proceedings).  A.R.S. § 13-2401, which

19  prohibits the online publication of a peace officer's personal information in certain

20  circumstances, is also a law of general applicability.  Although Plaintiffs allege that

21  Wilenchik's investigation and the arrests were carried out as part of an attempt to chill the

22  exercise of free speech, the enforcement of laws of general applicability does not violate the

23  First Amendment.  Therefore, the facts alleged do not show that the conduct of Arpaio or

24  Wilenchik violated Plaintiffs' First Amendment rights.

### 3. Count IV: False Imprisonment and Arrest

26         "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth

27  Amendment, provided the arrest was without probable cause or other justification."  *Dubner*

28

1    *v. City & County of S.F.*, 266 F.3d 959, 964 (9th Cir. 2001).[3]  "Probable cause exists when,

2    under the totality of the circumstances known to the arresting officers (or within the

3    knowledge of the other officers at the scene), a prudent person would believe the suspect had

4    committed a crime."  *Id.* at 966.

5         Although Plaintiffs allege that "[t]here was no probable cause for the arrests," they

6    do not support this conclusion with any facts showing that the arresting officers did not have

7    reason to believe they had violated A.R.S. § 13-2812, which prohibits the publication of

8    material connected to grand jury proceedings. (Compl. at 19.) The complaint acknowledges

9    that publishing the terms of a grand jury subpoena is a misdemeanor charge, and alleges that

10   Plaintiffs published the contents of the subpoenas issued by Wilenchik.  (Compl. at 18.)

11   Plaintiffs argue that the subpoenas were improper because Wilenchik failed to either secure

12   the prior permission of the grand jury or notify the grand jury foreperson or the presiding

13   criminal judge within ten days of issuing the subpoenas unilaterally.  (Pls.' Resp. in Opp'n

14   to Defs. Arpaio and MCSO's Mot. to Dismiss at 15; Compl. at 17.)  Plaintiffs argue that

15   because the grand jury subpoenas were improper, they did not violate A.R.S. § 13-2812.

16        However, the question is whether there was probable cause to believe Plaintiffs had

17   violated the statute by publishing the contents of Wilenchik's grand jury subpoenas.

18   Plaintiffs have not alleged any facts showing that under the totality of the circumstances

19   known to the arresting officers (or within the knowledge of the other officers at the scene),

20

21        [3]The Fourth Amendment is not necessarily violated merely because a suspect is
22   arrested rather than cited for a misdemeanor violation. *See Atwater v. City of Lago Vista*, 532
     U.S. 318, 340 (2001) (observing that "[w]e simply cannot conclude that the Fourth
23   Amendment, as originally understood, forbade peace officers to arrest without a warrant for
     misdemeanors not amounting to or involving breach of the peace."); *Virginia v. Moore,* 128
24   S. Ct. 1598, 1607 (2008) (noting that "warrantless arrests for crimes committed in the
     presence of an arresting officer are reasonable under the Constitution," and holding that a
25   police officer did not violate the Fourth Amendment by making an arrest based on probable
26   cause but prohibited by state law).  Although both *Atwater* and *Virginia* concerned arrests
     for misdemeanors committed in the arresting officer's presence, they still underscore the
27   fundamental point that the Fourth Amendment is not necessarily violated merely because a
28   suspect is arrested rather than cited for a misdemeanor violation.

1    a prudent person would not have believed that Plaintiffs violated A.R.S. § 13-2812 by

2    publishing the contents of the Wilenchik subpoenas.  Plaintiffs also allege that Arpaio

3    requested that Thomas investigate the publication of his home address on the Internet, and

4    pressured the Pinal County Attorney's Office to prosecute the case.  However, these

5    allegations are insufficient to show that Arpaio violated Plaintiffs' constitutional rights under

6    the Fourth Amendment.  Because Plaintiffs have failed to allege facts showing that the arrests

7    were made without probable cause or other justification, they have failed to state a claim for

8    false arrest under § 1983.

9                   **4.  Count IV: Malicious Prosecution and Abuse of Process**

10          In *Johnson v. Barker*, 799 F.2d 1396, 1399-1400 (9th Cir. 1986) the Ninth Circuit

11   Court of Appeals recognized that constitutional claims for malicious prosecution and abuse

12   of process under § 1983 arise out of the accused's substantive due process rights under the

13   Fourteenth Amendment.  However, the United States Supreme Court subsequently rejected

14   an attempt to bring suit for malicious prosecution and abuse of process under § 1983 when

15   based on substantive due process rights, holding that any such challenge must be brought

16   under the Fourth Amendment.  *Albright v. Oliver*, 510 U.S. 266, 274-75 (1994).  The Ninth

17   Circuit Court of Appeals has explained that "[i]n order to prevail on a § 1983 claim of

18   malicious prosecution, a plaintiff 'must show that the defendants prosecuted [him] with

19   malice and without probable cause, and that they did so for the purpose of denying [him]

20   equal protection or another specific constitutional right.'"  *Awabdy v. City of Adelanto*, 368

21   F.3d 1062, 1066 (9th Cir. 2004) (quoting *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189

22   (9th Cir. 1995)).  Plaintiffs have failed to allege that the malicious prosecution was done for

23   the purpose of denying them equal protection or another specific constitutional right.  As

24   discussed above, Plaintiffs have failed to allege facts showing a violation of the Privileges

25   and Immunities Clause, the First Amendment, or the Fourth Amendment.  Therefore, they

26   have failed to allege facts necessary to support a claim for malicious prosecution under §

27   1983.  For the same reasons, Plaintiffs failed to allege facts sufficient to support a claim for

28   abuse of process under § 1983.

### 5.  Count III: Unconstitutional Policies, Customs, and Failure to Train; Count V: Conspiracy

Arpaio and Wilenchik are sued in both their individual and official capacities. Individual liability hinges upon "participation in the deprivation of constitutional rights," which "may involve the setting in motion of acts which cause others to inflict constitutional injury." *Larez v. City of L.A.*, 946 F.2d 630, 645 (9th Cir. 1991) (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).  Official liability "is distinguished by the source of the constitutional harm; it must be attributable to official policy or custom." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).  Because Plaintiffs have failed to allege facts showing that they suffered any constitutional harm, they cannot prevail on their claims for failure to train and unconstitutional policy or custom. *Quintanilla v. City of Downey*, 84 F.3d 353, 355 (9th Cir. 1996).  For the same reason, Plaintiffs cannot prevail on their claim for conspiracy to commit violations of § 1983. *See Dooley v. Reiss*, 736 F.2d 1392, 1395 (9th Cir. 1984).

Because the Court has concluded that Plaintiffs have failed to allege facts showing that the conduct of Arpaio or Wilenchik violated a constitutional right, the Court need not consider whether the rights allegedly violated were clearly established.  The Court concludes that Arpaio and Wilenchik are entitled to qualified immunity with respect to Plaintiffs' claims for violations of § 1983 and conspiracy to commit violations of § 1983.

### E.  Plaintiffs' Notice of Claim

Defendants argue that Plaintiffs' state claims are barred because the notice of claim fails to set forth facts supporting the amount of damages sought, as required by Arizona's Claim Statute, A.R.S. § 12-821.01(A).  Section 12-821.01(A) provides that the required claim "shall contain facts sufficient to permit the public entity or public employee to understand the basis upon which liability is claimed.  The claim shall also contain a specific amount for which the claim can be settled and the facts supporting that amount."  The "statutory obligation that claimants present 'facts supporting that amount' requires that claimants explain the amounts identified in the claim by providing the government entity

with a factual foundation to permit the entity to evaluate the amount claimed." *Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 152 P.3d 490, 493 (Ariz. 2007).  This requirement "ensures that claimants will not demand unfounded amounts that constitute 'quick unrealistic exaggerated demands.'" *Id.* (quoting *Hollingsworth v. City of Phoenix*, 793 P.2d 1129, 1133 (Ariz. Ct. App. 1990)).  These statutory requirements "ensure that government entities will be able to realistically consider a claim." *Id.*

The Arizona Court of Appeals recently decided *Backus v. Arizona*, 2008 WL 2764601, Nos. 1 CA-CV 07-0640 and 1 CA-CV 07-0671 (Ariz. Ct. App. July 17, 2008), where the court considered whether two different notices of claim satisfied the statute.  In *Backus*, the defendant argued that a footnote in the *Deer Valley* decision required the court to consider the sufficiency of the facts supporting the settlement amount.  The *Backus* court stated that the defendant sought to "graft the word 'sufficient' from the second sentence of A.R.S. § 12-821.01(A), regarding sufficient facts to permit the public entity to understand the basis for liability, onto the third sentence of the statute regarding facts supporting the proposed settlement amount." *Backus* at *4.  The *Deer Valley* footnote stated:

> Because [the plaintiff's] letter does not include a specific sum, we need not reach the [defendant's] argument that [the plaintiff's] letter also fails to provide facts supporting the amount claimed. We note, however, that the claim letter does not provide any facts supporting the claimed amounts for emotional distress and for damages to [the plaintiff's] reputation.

152 P.3d at 494 n.3.  The *Backus* court rejected the defendant's argument, stating that:

> to the extent that such language can be characterized as guidance, it is clearly and strictly limited to the admonition that a notice of claim that does not provide any facts may be considered insufficient to support the proposed settlement amount. Simply stated, *Deer Valley* provides no guidance on what may or may not be sufficient facts beyond the one narrow circumstance of no facts at all.

*Backus* at *5.  The *Backus* court declined to read the word "sufficient" into the third sentence of the claim statute, and also declined to articulate a judicially-created standard to determine the sufficiency of facts supporting the settlement amount.  *Id.*  The court explained that:

> the information that may be deemed relevant to support a general damages claim in a wrongful death case with no special damages is quite different from a personal injury claim where an individual

> supporting a family is contending permanent impairment, past and
> future medical expenses, and past and future lost income as a result
> of the State's negligence.

*Id*.  The court explained that "[g]eneral damages in a negligence case are different than quantifiable special damages" and are, "by nature, subjective and personal to the individual seeking them."  *Id*. at *6.  The court observed that "the nature and extent of information subjectively desired by the government relative to general damages claims will likely vary from case to case.  Attempting to fashion a 'standard' against which such a general damages factual statement can be measured is equally impractical."  *Id*.  The court concluded that because the government is sophisticated and experienced in evaluating these sorts of claims, "[t]o the extent the governmental entity seeks additional information to evaluate the demand, it certainly can ask for it."  *Id*.

The *Backus* court held that "[i]f the notices of claim provided by Backus and Johnson contain *any* facts to support the proposed settlement amounts, regardless of how meager, then such notices met not only the literal language of the statute but also any requirement that may be implied from *Deer Valley*."  *Id*. at *7.  The court also held that in the context of the wrongful death claims asserted by Backus and Johnson, "the notices of claim were sufficient to meet any requirement implied by *Deer Valley* with respect to 'a factual foundation' supporting the proposed settlement amount."  *Id*. (citing *Deer Valley*, 152 P.3d at 493).  The court explained that:

> the claim letter provided at least two "facts" supporting the damages
> claim.  First, the letter noted that [the decedent] had died prematurely,
> and second, that she was survived by her mother and several other
> statutory beneficiaries.  While it may be preferable for the claimant
> to provide further detail concerning the "quality" of the relationship
> between the decedent and the statutory beneficiaries, the literal
> language of the statute does not require it.  Therefore, any facts in
> support of the claimed amount constitute the minimal compliance
> necessary to satisfy the statute as written.

*Id*. at *8.

The notice of claim at issue here stated that Plaintiffs sought the sum of $15,000,000. (Defs. Wilenchik and Bartness's Mot. to Dismiss, Ex. F at 16.)  Plaintiffs' state law claims include negligence, gross negligence, false arrest and imprisonment, malicious prosecution,

1   and abuse of process, and Plaintiffs seek only general damages. (Compl. at 8-16.) The

2   notice of claim letter included detailed information on the factual and legal basis for the

3   asserted claims. Plaintiffs have satisfied the statutory requirements to provide a specific

4   amount for which the claim can be settled and the facts supporting that amount. Therefore,

5   the notice of claim is sufficient and Plaintiffs' state law claims are not barred by A.R.S. § 12-

6   821.01(A).

7   ### F. Failure to State a Claim

8   #### 1. Claims brought under 42 U.S.C. § 1983

9   As discussed above, the Court concludes that Arpaio and Wilenchik are entitled to

10  qualified immunity with respect to Plaintiffs' claims for violations of 42 U.S.C. § 1983 or

11  conspiracy to commit violations of § 1983. The Court will now consider whether Plaintiffs

12  have failed to state a claim with respect to their other federal and state claims.

13  #### 2. Count VII: Federal and State Racketeering

14  Arpaio and Wilenchik argue that the Complaint fails to state a claim for federal or

15  state racketeering against them. Plaintiffs bring suit under 18 U.S.C. §§ 1961, *et seq.* and

16  A.R.S. §§ 13-2301, *et seq.* These statutes define racketeering activity to include a variety of

17  criminal acts which are indictable under state or federal law. 18 U.S.C. § 1961; A.R.S. § 13-

18  2301(D). The Complaint alleges that "Defendants have engaged in a pattern of unlawful

19  activity in order to obtain financial, political, and/or other gains that have resulted in harm

20  and injury to Plaintiffs." (Compl. at 32.) The Complaint alleges generally that this pattern

21  of unlawful activity includes "disguised campaign contributions, malicious prosecutions and

22  abuses of process, false imprisonments and arrests, asserting false claims, fraudulent

23  schemes, practices, and artifices, and extortions under color of official right." (Compl. at

24  32.) However, Plaintiffs have not alleged that any specific actions taken by Arpaio or

25  Wilenchik were unlawful under either federal or state law. Plaintiffs allege that Arpaio

26  encouraged the Maricopa and Pinal County Attorneys to investigate Plaintiffs' publication

27  of his home address, but this conduct is not unlawful, and is not actionable under the state

28  or federal racketeering statutes. Plaintiffs allege that Wilenchik issued subpoenas that were

overbroad and improper, and sought arrest warrants and fines; even if these actions were done maliciously or for an improper purpose, Plaintiffs have not alleged that they are indictable under federal or state law. Plaintiffs have failed to allege facts sufficient to raise the right to relief above the speculative level, and have failed to state a claim for federal or state racketeering against Arpaio or Wilenchik.

### 3. Negligence

To establish a claim for negligence, Plaintiffs must prove "(1) the existence of a duty recognized by law requiring [Defendants] to conform to a certain standard of care; (2) the [Defendants'] breach of that duty; (3) a causal connection between the breach and the resulting injury; and (4) actual damages." *Grafitti-Valenzuela ex rel. Grafitti v. City of Phoenix*, 167 P.3d 711, 714 (Ariz. Ct. App. 2007) (citing *Ontiveros v. Borak*, 667 P.2d 200, 204 (Ariz. 1983)). Whether a duty is owed is a legal question decided by the court, and public policy may support the recognition of a duty of care. *Id.* (citing *Gipson v. Kasey*, 150 P.3d 228, 232 (Ariz. 2007)). Arizona courts have declined to recognize negligence in the investigation of a crime as a tort, based on the public interest in the active investigation and prosecution of crime. *Landeros v. City of Tucson*, 831 P.2d 850, 851 (Ariz. Ct. App. 1992). Because Plaintiffs' negligence claim is not based on a cognizable legal theory, Plaintiffs have failed to state a claim for negligence.

### 4. Gross Negligence

Gross negligence exists where a plaintiff can show a flagrant violation that "evinces a lawless and destructive spirit." *Cullison v. City of Peoria*, 584 P.2d 1156, 1160 (Ariz. 1978). The *Landeros* court suggested that although a plaintiff may not recover for negligence in the investigation and prosecution of crime, he may recover where gross negligence exists. 831 P.2d at 851 (citing *Cullison*, 584 P.2d at 1158). *Landeros* and *Cullison* indicate that Arizona recognizes a duty of care to refrain from gross negligence in the course of investigating a criminal offense.

With respect to Arpaio, Plaintiffs have alleged that Arpaio encouraged the investigation of the online publication of his personal information, and that Defendants

1    directed the Selective Enforcement Unit to arrest Plaintiffs for publishing the contents of the

2    Wilenchik subpoenas.  Plaintiffs also allege that the publication of the contents of grand jury

3    subpoenas is a misdemeanor, which is not usually punishable by arrest or incarceration, and

4    that the arrests were carried out at night and at Plaintiffs' homes.  Even assuming that there

5    was probable cause to believe that Plaintiffs had committed a misdemeanor, the alleged

6    manner of the arrests supports Plaintiffs' allegations that the actions taken by Arpaio and the

7    arresting officers who reported to him were malicious and intended to retaliate against *The*

8    *New Times*'s political criticism.  Viewing the allegations in the light most favorable to

9    Plaintiffs, the Court cannot say, as a matter of law, that these allegations fall short of

10   demonstrating flagrant and wanton misconduct that evinces a lawless and destructive spirit.

11           With respect to Wilenchik, Plaintiffs have alleged that the subpoenas were issued

12   without properly presenting them to the grand jury or informing the grand jury within ten

13   days of issuing them unilaterally.  Plaintiffs have also alleged that the subpoenas were

14   overbroad and intended to retaliate against *The New Times* for its political criticism of Arpaio

15   and Thomas.  Plaintiffs also allege that Defendants, including Wilenchik, sent the Selective

16   Enforcement Unit to arrest Plaintiffs, and that Wilenchik knew that the subpoenas were

17   improper.  Viewing these allegations in the light most favorable to Plaintiffs, the Court

18   cannot conclude that as a matter of law these allegations do not reflect wanton misconduct

19   that evinces a lawless and destructive spirit.  Therefore, Plaintiffs have stated a claim for

20   gross negligence against Wilenchik and Arpaio.

21                        **5.  False Arrest and Imprisonment**

22           Plaintiffs' Complaint treats the claims against Defendants for false arrest and

23   imprisonment, malicious prosecution, and abuse of process together in Count VI, but the

24   Court will consider whether Plaintiffs have stated a claim for each tort against each

25   Defendant separately.  "False arrest, a species of false imprisonment, is the detention of a

26   person without his consent and without lawful authority."  *Reams v. City of Tucson*, 701 P.2d

27   598, 601 (Ariz. Ct. App. 1985) (citing *Slade v. City of Phoenix*, 541 P.2d 550, 552 (Ariz.

28   1975)).  "A plaintiff establishes a prima facie case by showing that he was arrested by the

defendant without a warrant, and the burden then devolves upon the defendant to establish that the arrest was founded upon probable cause." *Id.* (citing *Whitlock v. Boyer*, 271 P.2d 484, 487 (Ariz. 1954)).

Plaintiffs allege that they were arrested without warrants and without their consent, and that both Arpaio and Wilenchik directed the Selective Enforcement Unit to conduct the arrests.  (Compl. at 19, 31.)  Although Plaintiffs do not allege that Arpaio and Wilenchik personally conducted the arrests, they do allege that Wilenchik sought arrest warrants, and that Defendants, including Arpaio and Wilenchik, decided to arrest Plaintiffs and caused the arrests to occur by sending the Selective Enforcement Unit to Plaintiffs' homes.  Viewing the facts alleged in the light most favorable to Plaintiffs, Plaintiffs have alleged facts showing a prima facie claim, and have stated a claim for false arrest and imprisonment.

### 6. Malicious Prosecution

The elements of malicious prosecution include (1) a criminal charge initiated by the defendant; (2) a favorable determination for the plaintiff; (3) want of probable cause in the initiation of the proceedings; and (4) malice.  *Hymer v. Moore*, 504 P.2d 495, 497 (Ariz. Ct. App. 1972) (citing *Wisniski v. Ong*, 329 P.2d 1097, 1098 (Ariz. 1958)).  In the context of malicious prosecution, probable cause is "'a reasonable ground of suspicion, supported by circumstances sufficient to warrant an ordinarily prudent man in believing the accused is guilty of the offense. . . .  The test generally applied is: upon the appearances presented to the defendant, would a reasonably prudent man have instituted or continued the proceeding?'" *Hockett v. City of Tucson*, 678 P.2d 502, 505 (Ariz. Ct. App. 1983) (quoting *McClinton v. Rice*, 265 P.2d 425, 431 (Ariz. 1953)).  Arpaio and Wilenchik argue that Plaintiffs have failed to state a claim for malicious prosecution because they have failed to allege facts showing a lack of probable cause.  The relevant inquiry is whether Plaintiffs have alleged facts showing that there was no probable cause to initiate criminal proceedings.  *Slade*, 541 P.2d at 553.

Plaintiffs have not alleged that a criminal complaint was filed against them, or that a grand jury indictment was issued.  Plaintiffs allege that Wilenchik filed a motion for an order

to show cause before Judge Baca, who was presiding over the sitting County grand jury, asking the Judge to hold Plaintiffs in contempt and seeking warrants for their arrest based on their publication of the contents of the subpoenas. Plaintiffs also allege that they were arrested. The Court concludes that these actions may constitute the initiation of criminal proceedings for the purpose of stating a claim for malicious prosecution. Plaintiffs have alleged that Wilenchik did not properly follow grand jury procedures by failing to secure permission or notify the grand jury within ten days of issuing the subpoenas unilaterally, and that Wilenchik knew that the subpoenas were improper. Plaintiffs have alleged facts showing that "upon the appearances presented to" Wilenchik, a "reasonably prudent" person would not have had probable cause to believe they had violated A.R.S. § 13-2812(A) by publishing the contents of the subpoenas. *Hockett*, 678 P.2d at 505 (quoting *McClinton,* 265 P.2d at 431). Therefore, with respect to Wilenchik, Plaintiffs have stated a claim for malicious prosecution.

With respect to Arpaio, Plaintiffs have failed to allege that Arpaio initiated any criminal proceedings against them. Plaintiffs allege that Defendants, including Arpaio, directed the Selective Enforcement Unit to arrest Plaintiffs, but Plaintiffs' recovery based on this allegation is best analyzed within the context of Plaintiffs' claim for false arrest. Plaintiffs' allegations that Arpaio encouraged the investigation of the publication of his home address do not demonstrate that Arpaio initiated criminal proceedings against Plaintiffs. Vague allegations of a general conspiracy are insufficient to state a claim for malicious prosecution against Arpaio, because Plaintiffs have not alleged that he had any specific involvement in the initiation of criminal proceedings against Plaintiffs. The claim for malicious prosecution against Arpaio is therefore dismissed.

### 7. Abuse of Process

The elements of an abuse of process claim are "'(1) a willful act in the use of judicial process; (2) for an ulterior purpose not proper in the regular conduct of the proceedings.'" *Crackel v. Allstate Ins. Co.*, 92 P.3d 882, 887 (Ariz. Ct. App. 2004) (quoting *Nienstedt v. Wetzel*, 651 P.2d 876, 881 (Ariz. Ct. App. 1982)). The second element requires a plaintiff

to show "'that the process has been used primarily to accomplish a purpose for which the process was not designed.'" *Id*. (quoting *Nienstedt*, 651 P.2d at 881). "Arizona interprets 'process' as encompassing 'the entire range of procedures incident to the litigation process.'" *Id*. (quoting *Nienstedt*, 651 P.2d at 880).

The *Crackel* court has explained that "a claim of abuse of process may not be based solely on the fact that an opposing litigant received some secondary gain or emotional satisfaction from the use of a court process." *Id*. at 889. For instance, "'the entirely justified prosecution of another on a criminal charge . . . does not become abuse of process merely because the instigator dislikes the accused and enjoys doing him harm.'" *Id*. at 889 (quoting Restatement (Second) of Torts § 682 cmt. b (1977)). The plaintiff must show "that the court process was used primarily to pursue that improper motive." *Id*. To show that "a defendant's primary motive was improper, a claimant must establish that the defendant used a court process in a fashion inconsistent with legitimate litigation goals." *Id*. "Thus, plaintiffs must not only present evidence that the defendant used a court process for a primarily improper purpose, they must also show that, in using the court process, the defendant took an action that could not logically be explained without reference to the defendant's improper motives." *Id*.

Plaintiffs' Response in Opposition to Defendants Arpaio and MCSO's Motion to Dismiss offers no argument concerning abuse of process, and does not explain how Plaintiffs' allegations are sufficient to state a claim for abuse of process. Plaintiffs have alleged that Arpaio sought retribution against *The New Times* for its political criticism, encouraged the investigation of *The New Times*'s publication of his home address, and directed that Plaintiffs be arrested for the publication of the contents of the Wilenchik subpoenas. These allegations fall short of showing that Arpaio took a willful act in the use of judicial process for an ulterior purpose not proper in the regular conduct of the proceedings. The fact that Arpaio sought to have Plaintiffs criminally prosecuted does not constitute abuse of process merely because Arpaio disliked Plaintiffs and enjoyed doing them harm. Plaintiffs have failed to state a claim against Arpaio for abuse of process.

1    Wilenchik argues that he used the grand jury subpoena process for the purpose for
2    which it was designed, to make a determination whether to commence criminal proceedings.
3    Wilenchik also argues that allegations of improper motive, without allegations showing that
4    the process was used primarily to accomplish a purpose for which the process was not
5    designed, are insufficient to state a claim for abuse of process.  Plaintiffs allege that
6    Wilenchik disliked *The New Times,* and sought to interfere with their business revenues and
7    stop the newspaper's political criticism of Thomas and Arpaio.  Plaintiffs allege that
8    Wilenchik failed to follow grand jury procedures in issuing the subpoenas, and then filed a
9    motion for an order to show cause seeking arrest warrants, and asking that Plaintiffs be held
10   in contempt of court and penalized with exorbitant fines.  The Court cannot say that, as a
11   matter of law, these allegations are insufficient to show that the motion was used primarily
12   for an improper purpose for which it was not designed.  Plaintiffs allege that Wilenchik knew
13   that the subpoenas were not properly issued by the grand jury, and that the subpoenas were
14   overbroad and irrelevant to the alleged criminal offense of publishing Arpaio's home address.
15   The Court concludes that these allegations, viewed in the light most favorable to Plaintiffs,
16   are sufficient to show that Wilenchik's actions could not logically be explained without
17   reference to his improper motives.  Therefore, Plaintiffs have stated a claim for abuse of
18   process against Wilenchik.

19   **G.  Punitive Damages**

20   Defendants argue that "[a]lthough a municipality may be liable for compensatory
21   damages in § 1983 actions, it is immune from punitive damages under the statute."  *Mitchell*
22   *v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996) (citing *City of Newport v. Fact Concerts, Inc.*,
23   453 U.S. 247, 271 (1981)).  Because Plaintiffs' § 1983 claims are dismissed, the Court need
24   not address whether Plaintiffs may recover punitive damages against the individual
25   Defendants under § 1983.  Arpaio also argues that Plaintiffs cannot obtain punitive damages
26   on their state law claims because "[n]either a public entity nor a public employee acting
27   within the scope of his employment is liable for punitive or exemplary damages."  A.R.S. §
28   12-820.04.  In response, Plaintiffs concede that they may not recover punitive damages for

1  their state law claims.  (Pls.' Resp. in Opp'n to Defs. MCAO, Andrew Thomas, and Ann

2  Thomas's Mot. to Dismiss at 18.)

3      **IT IS ORDERED** granting in part and denying in part the Motion to Dismiss

4  Defendants Arpaio and the Maricopa County Sheriff's Office (Doc. 12).  The Maricopa

5  County Sheriff's Office is dismissed from this action.  The Motion is denied with respect to

6  Plaintiffs' claims for gross negligence and false arrest and imprisonment.  Plaintiffs' claims

7  against Arpaio and his wife for violations of 42 U.S.C. § 1983, conspiracy to violate 42

8  U.S.C. § 1983, federal and state racketeering, negligence, malicious prosecution, and abuse

9  of process are dismissed with leave to amend.

10     **IT IS FURTHER ORDERED** granting Defendants Maricopa County Attorney's

11 Office, Andrew Thomas, and Ann Thomas's Motion to Dismiss Pursuant to Rule 12(b)(6)

12 of the Federal Rules of Civil Procedure (Doc. 8).  The Maricopa County Attorney's Office,

13 Andrew Thomas, and Ann Thomas are dismissed from this action.

14     **IT IS FURTHER ORDERED** granting in part and denying in part Defendants

15 Dennis Wilenchik and Becky Bartness's Motion to Dismiss (Doc. 15).  The Motion is denied

16 with respect to Plaintiffs' claims for gross negligence, false arrest and imprisonment,

17 malicious prosecution, and abuse of process.  Plaintiffs' claims against Wilenchik and his

18 wife for violations of 42 U.S.C. § 1983, conspiracy to violate 42 U.S.C. § 1983, federal and

19 state racketeering, and negligence are dismissed with leave to amend.

20     **IT IS FURTHER ORDERED** that Plaintiffs file any Amended Complaint no later

21 than October 31, 2008.  If no Amended Complaint is filed by that date, this case will be

22 remanded to the Arizona Superior Court because no federal claims remain.

24     DATED this 3rd day of October, 2008.

Susan R. Bolton
United States District Judge