IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Lacey; Jim Larkin; and Phoenix New Times, LLC,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>Sheriff Joseph Arpaio and Ava Arpaio, husband and wife; *et al.*,<br><br>　　　　Defendants. | No. CV-08-00997-PHX-SRB<br><br>**ORDER** |

This matter comes before the Court on Arpaios' Motion to Dismiss First Amended Complaint ("Arpaio's Motion to Dismiss") (Doc. 67), Defendant Maricopa County's Motion to Dismiss Pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure/Request for Attorney's Fees and Costs ("County's Motion to Dismiss") (Doc. 73), and Defendants Dennis Wilenchik and Becky Bartness's Motion to Dismiss Plaintiffs' First Amended Complaint ("Wilenchik's Motion to Dismiss") (Doc. 75). The Court now considers Defendants' Motions.

**I.　BACKGROUND**

The Court thoroughly summarized the factual background of this matter in its Order dated October 3, 2008, and that background is fully incorporated herein. In that Order, the Court dismissed the Maricopa County Sheriff's Office and the Maricopa County Attorney's Office as Defendants because they are non-jural entities and are not subject to suit. The

1 Court dismissed Andrew and Ann Thomas as Defendants because Mr. Thomas is entitled to 2 absolute immunity. The Court dismissed Plaintiffs' claims against the Arpaio and Wilenchik 3 Defendants for violations of 42 U.S.C. § 1983, conspiracy to violate 42 U.S.C. § 1983, 4 federal and state racketeering, and negligence with leave to amend. The Court also dismissed 5 claims against the Arpaio Defendants for malicious prosecution and abuse of process with 6 leave to amend.

7 The Court declined to dismiss claims against Arpaio for gross negligence and false 8 arrest and imprisonment. The Court declined to dismiss claims against Wilenchik for gross 9 negligence, false arrest and imprisonment, abuse of process, and malicious prosecution. The 10 Court directed Plaintiffs to file any Amended Complaint no later than October 31, 2008. In 11 an Order dated November 19, 2008, the Court denied the parties' Motions for 12 Reconsideration. The Court will not revisit Defendants' arguments that the Court erred by 13 declining to dismiss the above state claims because these arguments were fully considered 14 in the Court's prior Orders dated October 3 and November 19, 2008. Plaintiffs filed their 15 First Amended Complaint on October 31, 2008. The Court now considers whether the 16 allegations in the First Amended Complaint have cured the deficiencies in Plaintiffs' federal 17 claims and whether Plaintiffs have stated a claim against Maricopa County ("the County").

18 **II.    LEGAL STANDARDS AND ANALYSIS**

19     **A.    Rule 12(b)(6) Motion to Dismiss**

20 The Federal Rules of Civil Procedure require a "short and plain statement of the claim 21 showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Gilligan v. Jamco Dev.* 22 *Corp.,* 108 F.3d 246, 248 (9th Cir. 1997). Thus, dismissal for insufficiency of a complaint 23 is proper if the complaint fails to state a claim on its face. *Lucas v. Bechtel Corp.*, 633 F.2d 24 757, 759 (9th Cir. 1980). A Rule 12(b)(6) dismissal for failure to state a claim can be based 25 on either: (1) the lack of a cognizable legal theory; or (2) insufficient facts to support a 26 cognizable legal claim. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 27 1990); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

28

In determining whether an asserted claim can be sustained, all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). As for the factual allegations, the Supreme Court has explained that they "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). In ruling on a motion to dismiss, the issue is not whether the plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. *Gilligan*, 108 F.3d at 249.

### B. Absolute Immunity

Wilenchik again argues that he is entitled to absolute immunity. (Wilenchik's Mot. to Dismiss at 4.) Wilenchik does not advance any arguments different from those asserted in his original motion to dismiss. (Wilenchik's Mot. to Dismiss at 4.) As discussed in the Court's Order dated October 3, 2008, Wilenchik has failed to show that the subpoenas were issued as part of the judicial phase of the criminal process, since they were not presented or sent to the grand jury at any time. Therefore, for the reasons more fully discussed in the Court's prior Order, Wilenchik is not entitled to absolute prosecutorial immunity. If a prosecutor is not entitled to absolute immunity for having performed investigatory or administrative functions, he may still be entitled to qualified immunity. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) (citing *Buckley*, 509 U.S. at 273).

### C. Qualified Immunity

Wilenchik and Arpaio both argue that they are entitled to qualified immunity with respect to Plaintiffs' claims for violations of their constitutional rights. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526

- 3 -

1  (1985)). Qualified immunity questions should be resolved "'at the earliest possible stage in
2  litigation.'" *Id*. (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

3  When determining whether a defendant is entitled to qualified immunity, the court
4  considers (1) "whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc.
5  12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right" and
6  (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged
7  misconduct." *Id*. at 816 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). *Pearson* held
8  that the sequence set forth in *Saucier* is not mandatory and that district judges have
9  "discretion in deciding which of the two prongs of the qualified immunity analysis should
10 be addressed first in light of the circumstances in the particular case at hand." *Id*. at 818. In
11 this case, the Court will first consider whether the facts that Plaintiffs have alleged make out
12 a violation of a constitutional right.

13 Arpaio and Wilenchik contend that the facts alleged do not show that their conduct
14 violated a constitutional right. Count IV of the First Amended Complaint alleges violations
15 of 42 U.S.C. § 1983 based on violations of the Free Speech Clause of the First Amendment,
16 the Fourth Amendment, the Fifth Amendment, and the Fourteenth Amendment. Plaintiffs
17 allege that they were "subjected to false imprisonment and arrest, malicious and selective
18 prosecution," and "retaliatory conduct from law enforcement, and were
19 investigated/prosecuted, arrested, and jailed without proper cause, with an unconstitutional
20 motive, and without equal protection or due process in an attempt to chill Plaintiffs' free
21 speech and criticism and intrude upon the privacy rights of all private citizens who read *The*
22 *New Times*." (First Am. Compl. at 34.) The First Amended Complaint also alleges that
23 Defendants violated 42 U.S.C. § 1983 by failing to supervise and train those who arrested
24 Plaintiffs and by establishing official policies and customs that violated Plaintiffs' rights.
25 (First Am. Compl. at 31-34.) The First Amended Complaint also alleges that Arpaio and
26 Wilenchik conspired to commit violations of 42 U.S.C. § 1983. (First Am. Compl. at 35.)

27 **1. Count IV**

1 "To state a claim under § 1983, a plaintiff must allege the violation of a right secured
2 by the Constitution and laws of the United States, and must show that the alleged deprivation
3 was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48
4 (1988). With respect to Count IV, the only substantive change from the original Complaint
5 is the addition of a claim for selective prosecution. Plaintiffs' allegations concerning their
6 First Amendment free speech and free press rights, false imprisonment and arrest, malicious
7 prosecution, and abuse of process are not meaningfully different from those in the original
8 Complaint. For the same reasons discussed in the Court's Order dated October 3, 2008,
9 Plaintiffs have not alleged facts in the First Amended Complaint sufficient to show violations
10 of § 1983 based on false imprisonment and arrest, malicious prosecution, abuse of process,
11 or First Amendment free speech and free press rights. The Court now considers whether
12 Plaintiffs have alleged facts showing the violation of a constitutional right based on a theory
13 of selective prosecution.

14 Plaintiffs' claim for "selective prosecution" is essentially an equal protection
15 challenge under the Fourteenth Amendment. *Rosenbaum v. City & County of San Francisco*,
16 484 F.3d 1142, 1152 (9th Cir. 2007). "A government entity has discretion in prosecuting its
17 criminal laws, but enforcement is subject to constitutional constraints." *Id.* (citing *Wayte v.
18 United States*, 470 U.S. 598, 608 (1985) (holding that enforcement policy did not violate the
19 First or Fifth Amendments because plaintiff had "not shown that the enforcement policy
20 selected nonregistrants for prosecution on the basis of their speech")). "To prevail on its
21 claim under the equal protection clause of the Fourteenth Amendment, a plaintiff must
22 demonstrate that enforcement had a discriminatory effect and the police were motivated by
23 a discriminatory purpose." *Id.* "'To establish a discriminatory effect . . ., the claimant must
24 show that similarly situated individuals . . . were not prosecuted.'" *Id.* at 1153 (quoting
25 *United States v. Armstrong*, 517 U.S. 456, 465 (1996)). "To show discriminatory purpose,
26 a plaintiff must establish that 'the decision-maker . . . selected or reaffirmed a particular
27 course of action at least in part "because of," not merely "in spite of," its adverse effects upon
28 an identifiable group.'" *Id.* (quoting *Wayte*, 470 U.S. at 610 (internal citation omitted)).

- 5 -

The First Amended Complaint alleges that "Plaintiffs were investigated, prosecuted, arrested, and/or jailed by Defendants for improper unconstitutional motives, were treated differently than others similarly situated, were subjected to improper abuse of process and power for improper motives, and were arrested and jailed without proper or probable cause." (First Am. Compl. at 35.) Specifically, Plaintiffs allege that the publication of Arpaio's home address was abusively investigated by Wilenchik and that he issued invalid, invasive, and overbroad subpoenas against *The New Times* and its reporters, editors, and readers. (First Am. Compl. at 18-22.) The First Amended Complaint alleges that Plaintiffs were singled out for prosecution by quoting a memorandum written by Ron Lebowitz, Director of Legal Affairs for the Maricopa County Sheriff's Office. (First Am. Compl. at 6-8.)

The memorandum is addressed to the Pinal County Attorney and dated November 28, 2005. (First Am. Compl., Ex. 1 at 1.) It addresses the legal question of whether the provisions of A.R.S. § 13-2401, *et seq.* generally infringe First Amendment free speech and free press protections.[1] (First Am. Compl., Ex. 1 at 1.) The memorandum also argues that the fact that other websites have listed Arpaio's home address would not prevent a successful prosecution of individuals responsible for the publication of his home address on *The New*

---

[1] A.R.S. § 13-2401 provides:
> A. It is unlawful for a person to knowingly make available on the world wide web the personal information of a peace officer, justice, judge, commissioner, public defender or prosecutor if the dissemination of the personal information poses an imminent and serious threat to the peace officer's, justice's, judge's, commissioner's, public defender's or prosecutor's safety or the safety of that person's immediate family and the threat is reasonably apparent to the person making the information available on the world wide web to be serious and imminent.
> B. It is not a violation of this section if an employee of a county recorder, county treasurer or county assessor publishes personal information, in good faith, on the web site of the county recorder, county treasurer or county assessor in the ordinary course of carrying out public functions.

- 6 -

1  *Times* website. (First Am. Compl., Ex. 1 at 6-9.) Specifically, the memorandum addresses
2  the fact that Arpaio's home address appeared on the websites of the Maricopa County
3  Recorder, the Maricopa County Election Commission, and the Republican Party. (First Am.
4  Compl., Ex. 1 at 7.) Plaintiffs quote the following language from the memorandum, where
5  Mr. Lebowtiz argues that the publication on *The New Times* website violates A.R.S. § 13-
6  2401, but the publication on the other websites does not:

> Unlike the *New Times* web cite [sic], the three (3) other web cites [sic] raised by others as examples are neutral. In other words, none of these other web cites [sic] are or have ever been historically anti-Arpaio, especially in the consistent and invariable way that *New Times* has been since 1993. None of the other web cites [sic] have openly revealed the intent or purpose to destroy the Sheriff's career as an elected official, using all the vigor it could muster. . . . None of the other web cites [sic], historically, have resorted to writing articles against the Sheriff, using language that is inflammatory, insulting, vituperative, and the like – all of which having the effect of attracting those of the "lunatic fringe" who, for reasons of their own, view themselves as the Sheriff's sworn enemies and make it a practice to replicate *New Times* anti-Arpaio articles on web cites [sic] of their own or otherwise generally keep in touch with *New Times* as anti-Arpaio "true believers."

(First Am. Compl. at 6, Ex. 1 at 8-9.) It is clearly alleged that Mr. Lebowitz and Arpaio encouraged the Pinal County Attorney to prosecute the publication of Arpaio's home address on *The New Times* website and that they did so because *The New Times* publicly criticized Arpaio's conduct as a public official. (First Am. Compl. at 9, 11-15.) However, "[t]o prevail on [their] claim under the equal protection clause of the Fourteenth Amendment, [Plaintiffs] must demonstrate that enforcement had a discriminatory effect and the police were motivated by a discriminatory purpose." *Rosenbaum*, 484 F.3d at 1152. Although Plaintiffs have alleged facts showing a discriminatory purpose, they have not alleged facts showing a discriminatory effect.

To establish a discriminatory effect, Plaintiffs must show that similarly situated individuals were not prosecuted. *Id.* at 1153. Plaintiffs have not alleged facts showing that the investigation of Plaintiffs' alleged violation of A.R.S. § 13-2401 had a discriminatory effect because they have not alleged facts showing that similarly situated individuals were not prosecuted. Plaintiffs point to the websites described in Mr. Lebowitz's memorandum

- 7 -

1  as examples of similarly situated individuals who were not prosecuted. However, these
2  websites are not similarly situated. The publications on the websites of the Maricopa County
3  Recorder and the Maricopa County Elections Commission likely fall within the specific
4  exemption for personal information published by county employees in good faith in the
5  ordinary course of carrying out public functions. A.R.S. § 13-2401(B). Plaintiffs argue that
6  Mr. Lebowitz's memorandum stressed that the other three websites were "neutral," while *The*
7  *New Times* was "anti-Arpaio," and that this difference shows that Plaintiffs were targeted for
8  prosecution based on the content of their speech. (First Am. Compl. at 6, Ex. 1 at 8.)
9  However, Plaintiffs have not alleged that these three websites, or any other websites, violated
10 § 13-2401 but were not prosecuted. Plaintiffs contend that they did not violate § 13-2401
11 and this claim is considered in the context of their claim for malicious prosecution. It is
12 possible that *The New Times* website's context of criticism of Arpaio's conduct as a public
13 official could be relevant to the issue of whether the publication posed "an imminent and
14 serious threat" to Arpaio's safety in violation of A.R.S. § 13-2401.

15 Plaintiffs have not alleged that other websites published Arpaio's home address in the
16 context of any discussion, positive or negative, about Arpaio's conduct as a public official,
17 but were not investigated or prosecuted, and have not alleged facts showing that similarly
18 situated individuals violated § 13-2401 but were not prosecuted. With respect to Plaintiffs'
19 arrests for publishing the contents of the Wilenchik subpoenas, Plaintiffs have not alleged
20 that other individuals published the contents of grand jury subpoenas, but were not arrested
21 or prosecuted. Therefore, Plaintiffs have failed to allege a discriminatory effect and have
22 failed to state a claim for selective prosecution or enforcement under the Fourteenth
23 Amendment.

24 **2. Count III: Unconstitutional Policies, Customs, and Failure to Train;
25 Count V: Conspiracy**

26 As discussed in the Court's prior Order, because Plaintiffs have failed to allege facts
27 showing that they suffered any constitutional harm, they cannot prevail on their claims for
28 failure to train and unconstitutional policy or custom. *Quintanilla v. City of Downey*, 84 F.3d

- 8 -

1   353, 355 (9th Cir. 1996). For the same reason, Plaintiffs cannot prevail on their claim for
2   conspiracy to commit violations of § 1983. *See Dooley v. Reiss*, 736 F.2d 1392, 1395 (9th
3   Cir. 1984).

4   Because the Court has concluded that Plaintiffs have failed to allege facts showing
5   that the conduct of Arpaio or Wilenchik violated a constitutional right, the Court need not
6   consider whether the rights allegedly violated were clearly established. The Court concludes
7   that Arpaio and Wilenchik are entitled to qualified immunity with respect to Plaintiffs'
8   claims for violations of § 1983 and conspiracy to commit violations of § 1983. The Court
9   will now consider whether Plaintiffs have failed to state a claim with respect to their other
10  federal claims.

**D.   Count VII: Federal Racketeering**

12  There are no substantive differences between the allegations in the original Complaint
13  and the First Amended Complaint with respect to Plaintiffs' claim for federal racketeering
14  against all Defendants. For the reasons discussed in the Court's Order dated October 3,
15  2008, this claim is dismissed.

**E.   Defendant Maricopa County**

17  The County argues that Plaintiffs have failed to state a claim against the County with
18  respect to all federal and state claims asserted in the First Amended Complaint. The Court
19  begins by considering Plaintiffs' claims for violations of 42 U.S.C. § 1983 in Counts III and
20  IV. "A municipality may be held liable under a claim brought under § 1983 only when the
21  municipality inflicts an injury, and it may not be held liable under a respondeat superior
22  theory." *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1185 (9th Cir. 2002) (citing
23  *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978)). Plaintiffs argue
24  that the County itself violated Plaintiffs rights and that the County is also indirectly liable for
25  a constitutional tort committed by its employee. (Pls.' Resp. to County's Mot. to Dismiss at
26  2-9.)

27  First, Plaintiffs argue that the County is directly liable to Plaintiffs under *Monell*. A
28  municipality as an entity is responsible under § 1983 "when execution of a government's

1 policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly
2 be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694.  Plaintiffs
3 argue that Arpaio, Thomas, and Wilenchik were all official policymakers, and that the
4 County is therefore liable for injury inflicted by the County.  But Plaintiffs have failed to
5 allege facts showing that they suffered any constitutional harm; therefore, Plaintiffs have not
6 alleged any injury inflicted by the County based on the execution of the County's policy or
7 custom.  Plaintiffs also argue that their allegation that the Board of Supervisors ratified
8 Wilenchik's appointment as special prosecutor suffices to allege direct municipal liability.
9 Plaintiffs allege that the Maricopa County Board of Supervisors considered the Wilenchik
10 appointment and that the County knew or should have known that the appointment was
11 tainted by a conflict of interest.  (First Am. Compl. at 16.)  However, Plaintiffs have not
12 alleged facts showing that Wilenchik's conduct violated a constitutional right.  Plaintiffs
13 cannot prevail on a § 1983 claim against the County based on the Board's failure to oppose
14 Wilenchik's appointment, since that appointment did not cause any constitutional harm.

15 Second, Plaintiffs argue that "through its *omissions* the municipality is responsible for
16 a constitutional violation committed by one of its employees, even though the municipality's
17 policies were facially constitutional, the municipality did not direct the employee to take the
18 unconstitutional action, and the municipality did not have the state of mind required to prove
19 the underlying violation." *Gibson*, 290 F.3d at 1186 (citing *City of Canton v. Harris*, 489
20 U.S. 378, 387-89 (1989)).  "To impose liability against the County under *Canton*, a plaintiff
21 must show: (1) that a County employee violated [Plaintiffs'] rights; (2) that the County has
22 customs or policies that amount to deliberate indifference (as that phrase is defined by
23 *Canton* ); and (3) that these policies were the moving force behind the employee's violation
24 of [Plaintiffs'] constitutional rights, in the sense that the County could have prevented the
25 violation with an appropriate policy." *Id*. at 1194-95 (citing *Amos v. City of Page*, 257 F.3d
26 1086, 1094 (9th Cir. 2001)).  Plaintiffs have not alleged that a County employee violated
27 Plaintiffs' constitutional rights.  As discussed above, Plaintiffs have failed to allege facts
28

showing that Arpaio or Wilenchik violated Plaintiffs' constitutional rights. Therefore, Plaintiffs cannot state a claim for a violation of § 1983 based on a theory of indirect liability.

The County also requests an award of attorney's fees and costs under Federal Rule of Civil Procedure 11 and argues that Plaintiffs' claims are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b). The County has failed to comply with Rule 11(c)(2)'s requirement that a motion for sanctions must be made separately from any other motion. Furthermore, although Plaintiffs have failed to state a claim against the County for violations of § 1983, an award of attorney's fees and costs is not warranted under Rule 11. The County's request for attorney's fees and costs is denied.

### F. Subject Matter Jurisdiction

28 U.S.C. § 1447(c) addresses cases removed from a state court, and states that if "at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." This matter was removed from the Maricopa County Superior Court pursuant to 28 U.S.C. §§ 1331 and 1441(b). The First Amended Complaint states that this Court has jurisdiction pursuant to 28 U.S.C. § 1331, which provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Plaintiffs do not contend that this Court has subject matter jurisdiction based on diversity of citizenship. Because all of Plaintiffs' federal claims are dismissed, the Court lacks subject matter jurisdiction over Plaintiffs' remaining claims. Therefore, the Court does not reach Defendants' remaining arguments concerning Plaintiffs' state law claims. This action is remanded to the Superior Court of Arizona in and for Maricopa County.

**IT IS ORDERED** granting in part and denying in part Arpaio's Motion to Dismiss (Doc. 67), Defendant Maricopa County's Motion to Dismiss (Doc. 73), and Wilenchik's Motion to Dismiss (Doc. 75).

1  **IT IS FURTHER ORDERED** dismissing Plaintiffs' claims for violations of 42 U.S.C. § 1983, conspiracy to commit violations of 42 U.S.C. § 1983, and racketeering violations under 18 U.S.C. § 1961, *et seq*.

**IT IS FURTHER ORDERED** remanding this action to the Superior Court of Arizona in and for Maricopa County.

DATED this 13th day of March, 2009.

_____
Susan R. Bolton
United States District Judge